## Manheim Mutual Fire Ins. Co., Plff. in Err., *v.* Albert Thompson et al.

Whether a change in the machinery, etc., by which an insured factory is run, increases the risk, is a question of fact for the jury.

(Decided October 5, 1885.)

Error to the Common Pleas of Mifflin County to review a judgment for plaintiffs in an action on a policy of insurance. Affirmed.

The facts are stated in the first four paragraphs of the charge of the court below:

Charge. The plaintiffs, trading as Thompson Brothers, sue the defendant, the Manheim Mutual Fire Insurance Company, to recover the amount of a fire policy issued by the defendant in their favor.

The policy is dated July 8, 1879, on plaintiffs' stock of wool

NOTE.—It has been uniformly held in Pennsylvania that, if there is a change in the premises by any alteration, it is for the jury to determine whether the risk has thus been increased, and whether the loss is the result of this change. In case these conditions are found affirmatively, no recovery can be had; otherwise, if the negative is decided upon. Girard F. & M. Ins. Co. v. Stephenson, 37 Pa. 293, 78 Am. Dec. 423; Long v. Beeber, 106 Pa. 466, 51 Am. Rep. 532; Franklin F. Ins. Co. v. Brock, 57 Pa. 74; Fire Asso. v. Gilmer, 3 Walk. (Pa.) 234; Perry County Ins. Co. v. Stewart, 19 Pa. 45. See editorial note to Davis v. Western Home Ins. Co. 10 L. R. A. 359, as to effect of change in machinery or in use of property.

yarns, finished and unfinished goods, such as stockings, cassimeres, jeans, and also oils and dye stuffs contained in their woolen mill, situate in Milroy, in this county. The plaintiffs gave in evidence the policy and the application. This was followed with proof that the property insured was consumed by fire on December 26, 1883, involving a loss of upwards of $10,000; and that notice of the loss, as well as the proofs thereof, were given the defendant within the time stipulated in the policy. This made out a prima facie case, and you ought to find for the plaintiffs the amount of the policy, unless the defendant has succeeded in establishing a defense to the claim.

The contention of the defendant is that it has done so. The defendant insists that there can be no recovery, because the plaintiffs operated a steam boiler and engine in the building; that the operation of the steam boiler in the mill was not disclosed in the application, and that they operated a steam engine in propelling the mill after the policy was issued without notice to the defendant of the increase of the risk. The defendant further defends upon the ground that the plaintiffs represented, when the insurance was taken, that the mill was operated by water power, and that a steam engine was subsequently added, thus increasing the risk, of which the company had no notice.

It is also insisted that, in the application, the plaintiffs described the mill as a woolen mill, when in truth and in fact it was a cotton mill; that this answer was a warranty that the mill was a woolen mill, and that it was broken because it was not a woolen mill, but a cotton mill.

.     .     .     .     .     .     .     .     .     .

It is the settled law that the application, survey, and policy constitute the contract between the insurer and the assured. It is by this alone, that their respective rights and duties are to be ascertained and determined. In the case in hand, the application declares that all the statements therein contained shall constitute warranties on the part of the insured. Where a warranty is made and broken, it vitiates the policy whether injury results from the breach of the warranty or not, and in this a warranty differs from a misrepresentation or false statement. It is insisted by the defendant that the answer by the plaintiffs to the second interrogatory in the application was false; that the plaintiffs warranted the truth of the answer. It is insisted also that the warranty contained in the answer to the application was

broken in two particulars: (1) Because the plaintiffs' answer to the second interrogatory, "By whom and for what purpose the building was occupied,"—was that it was occupied as a woolen mill. That this was false, because it was a cotton mill, and not a woolen mill; (2) because the plaintiffs answer that it was run by water power, when in truth and in fact it was run by steam power.

We instruct you that, under the terms of the contract, these answers were warranties, and, if both or either of the answers was false, it vitiates and destroys the policy, and you ought to find for the defendant. On the contrary, if you find that the answers were true, then there was no breach of the warranty, and the plaintiffs can recover on this branch of the case.

It is a principle of the law that the stipulations in an insurance contract will be construed most strongly in favor of the assured. It will be observed, by reading the application, that the question is nowhere distinctly put to the assured, how the mill is propelled,—whether by steam or water. The truth is, the answer by the plaintiffs that it was run by water power was volunteered, and was not in response to a question asked in the application. The purpose for which the mill was occupied was distinctly asked, and the answer was just as distinctly given,—a woolen mill.

The defendant gave evidence that a certain percentage of cotton was used in the manufacture of goods in the mill, and, because this is so, that the mill was a cotton mill, and not a woolen mill. It is for you to say whether the use of a percentage of cotton in the manufacture of goods rendered it a cotton mill, and not a woolen mill, as the plaintiffs represented it to be. In determining this question, you will bear in mind that the application is for insurance on wool yarns, cassimeres, jeans, etc., contained in a woolen mill. Thus you see that the insurance was on jeans. Are jeans composed of wool exclusively, or does a certain percentage enter into their composition? If it does, it is a circumstance for the jury to consider whether the fact that cotton was used in the mill destroyed its distinctive feature as a woolen mill, so as to render the answer false. How this is, the jury will determine from the evidence. If you find that the mill was not a woolen mill, you ought to find for the defendant, because the answer would be false, and the warranty

would be broken, and the policy void, even though the risk was not thereby increased.

We next come to the answer that the mill was run by water power. Is this answer true? If it is, there is no breach of the warranty on this ground. If the jury find that, at the time of the application, the mill was run by water, there would be no breach of the warranty such as would defeat the policy, even if the plaintiffs did afterwards add a steam engine to run the mill without notice to the defendant. The defendant has given evidence, which is not denied by the plaintiffs, that at the time of the insurance there was a boiler in the mill used for heating the same and in drying the material used in the manufacture of goods. It insists that this fact establishes that the mill was not run by water, as the answer declares, but by water and steam combined, and that, therefore, the answer of the plaintiffs is false. What is meant by the expression, "run by water power?" We think it means the propelling power that drives the machinery of the mill into action that is engaged in the manufacture of the goods. The plaintiffs were not asked whether steam was used in the building. If they had been, and had answered, no, the answer would have been false, and the policy would have been avoided. We therefore charge you that, if the mill was not run by water, you ought to find for the defendant; but if it was run by water power, although steam was used in the building too for heating and drying purposes, this, of itself, would not defeat the action.

There is a condition in the policy which declares that, if the risk be increased after the insurance is effected, or if the property be so used as to render the risk more hazardous than it was at the time of the insurance, without notice to the company and containing its written consent to the continuance of the policy, the insurance shall be void and of no effect. The defendant has given evidence that the plaintiffs violated this condition of the policy by the introduction of a steam engine as a propelling power to drive the mill when the water was low, and that this increased the risk. The plaintiffs concede that this engine was put up after the insurance was effected. There is no pretense that the defendant had notice of its erection and consented thereto; therefore, we instruct you that, if you find from the evidence that the introduction of the engine increased the risk, plaintiffs cannot recover, but you ought to find for the defendant.

But if this did not increase the risk, its introduction would not defeat a recovery.

*Elder & Son* and *W. M. Franklin* for plaintiff in error.

*Woods & Son* and *Andrew Reed* for defendants in error.

PER CURIAM:

This case was submitted to the jury under a fair and correct charge. The machinery was driven by water power when the policy issued. Whether the change increased the hazard was a question of fact for the jury. In view of the whole evidence, we see no error in the answers to the points submitted.

Judgment affirmed.